UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ASHLEY A.M.,[1]

                                     Plaintiff,                          6:23-cv-0738 (BKS/TWD)

v.

MARTIN O'MALLEY, Commissioner of Social Security,

                                     Defendant.
_____

**Appearances:**

*For Plaintiff:*
Howard D. Olinsky
Olinsky Law Group
250 South Clinton Street, Suite 210
Syracuse, NY 13202

*For Defendant:*
Carla B. Freedman, United States Attorney
Candace M. Brown Casey, Special Assistant United States Attorney
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Ashley A.M., filed this action under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a decision by the Commissioner of Social Security denying Plaintiff's application for a period of disability, disability insurance benefits, and supplemental security income. (Dkt. No. 1). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks for a

---

[1] In accordance with the local practice of this Court, Plaintiff's last name has been abbreviated to protect her privacy.

Report-Recommendation. (Dkt. No. 7); N.D.N.Y. L.R. 72.3(d). On July 2, 2024, after reviewing the parties' briefs and the Administrative Record,[2] (Dkt. Nos. 11, 16, 20), Magistrate Judge Dancks issued a Report-Recommendation recommending that Plaintiff's motion for judgment on the pleadings be granted, that the Commissioner's decision be reversed, and that this matter be remanded to the Commissioner for further proceedings. (Dkt. No. 21). The Commissioner filed objections to the Report-Recommendation and Plaintiff responded. (Dkt. Nos. 22, 23). For the following reasons, the Court adopts the Report-Recommendation and reverses and remands the decision of the Commissioner.

## II.     STANDARD OF REVIEW

The Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.* To the extent a party makes "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments" set forth in the original

---

[2] The Court cites to the Bates numbering in the Administrative Record, (Dkt. No. 11), as "R." throughout this opinion, rather than to the page numbers assigned by the CM/ECF system.

submission, the Court will only review for clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

## III.    ANALYSIS

### A.    Report-Recommendation

The parties have not raised any objections to the facts or legal framework set forth in the Report-Recommendation. (*See* Dkt. No. 21, at 2–6). The Court therefore adopts Magistrate Judge Dancks's summary of the factual and procedural background and applicable law, and presumes familiarity with those matters for the purposes of this decision. The Court also adopts those aspects of the Report-Recommendation to which neither party has raised a specific objection, finding no clear error therein. *See Molefe*, 602 F. Supp. 2d at 487.

In the Report-Recommendation, Magistrate Judge Dancks found that the ALJ failed to analyze whether, at step three of the familiar five-step sequential evaluation process, Plaintiff satisfied her burden of showing that her mental impairments met "paragraph C" criteria of the listing applicable to "[s]chizophrenia spectrum and other psychotic disorders," 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.03 ("Listing 12.03"). (Dkt. No. 21, at 7–12). As Magistrate Judge Dancks explained, Listing 12.03 contains "three paragraphs, designated A, B, and C," (Dkt. No. 21, at 8 (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2))), and in order to satisfy Listing 12.03, a plaintiff's "mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." (*Id.* (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(A)(2))). Magistrate Judge Dancks first outlined the paragraph A criteria, which requires medical documentation showing "one or more of the following":

    1. Delusions or hallucinations;

    2. Disorganized thinking (speech); or

    3. Grossly disorganized behavior or catatonia.

3

(Dkt. No. 21, at 8 (quoting Listing 12.03(A)(1)–(3)).[3] Next, Magistrate Judge Dancks outlined the paragraph B criteria, which require showing an "[e]xtreme limitation, or marked limitation of two of the following areas of mental functioning": understanding, remembering, or applying information; interacting with others, concentration, persistence, or pace, and adapting or managing oneself. (*Id.* at 8 (citing Listing 12.03(B)). Magistrate Judge Dancks observed that "the ALJ conducted a thorough analysis" of the paragraph B criteria, and concluded that Plaintiff "had only mild or moderate limitations in each of the areas of mental functioning, and supporting each with evidence from Plaintiff's medical records." (*Id.* at 10 (citing R. 786–87)). "By contrast," Magistrate Judge Dancks continued, "the ALJ conducted no such analysis of the 'paragraph C criteria,'" which include the following:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> > 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
> >
> > 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

(*Id.* 9–10 (internal citations omitted) (quoting Listing 12.03(C))). Reviewing the ALJ's decision, Magistrate Judge Dancks found that the "sole mentions of the 'paragraph C' criteria" were the ALJ's references to the opinions of state agency review psychologists, Drs. Lieber-Diaz and Dambrocia, who both opined that "the evidence did not establish the presence of the 'paragraph C' criteria." (*Id.* at 10 (citing R. 787–88)). Magistrate Judge Dancks observed that the "ALJ was

---

[3] Neither party appears to dispute Plaintiff's mental disorder satisfied paragraph A.

entitled to rely on the" opinions of the state agency review psychologists, (*id.* at 12), but noted that Plaintiff's medical and treatment records showed "ongoing treatment to diminish her schizophrenia symptoms, as required to satisfy Listing 12.03(c)(1)," and indicated that Plaintiff "may have experienced" marginal adjustment as defined by Listing 12.03(c)(2),[4] (*id.* at 10–11). In light of the differing evidence and "'without some reasoned explanation as to why Plaintiff's'" mental impairments did not satisfy the paragraph C criteria, Magistrate Judge Dancks concluded that Court could not "'perform the meaningful review it was required to perform,'" (*id.* at 10–12 (quoting *Jonisha M. G. v. Comm'r of Soc. Sec.*, No. 22-cv-1412, 2024 WL 1219696, at *7, 2024 U.S. Dist. LEXIS 50007, at *17 (N.D.N.Y. Mar. 21, 2024))), and recommended that the Commissioner's decision be reversed and remanded for further consideration, (*id.* at 12).

### B.     Objections

The Commissioner objects to the Report-Recommendation, arguing that even if the ALJ's analysis at step three was deficient, Magistrate Judge Dancks considered only "four pages" of the ALJ's decision, that the remainder of the "26-page decision" not only detailed and analyzed the relevant evidence but "addressed the 'paragraph C' criteria" of Listing 12.03, and that substantial evidence supports the ALJ's conclusion that Plaintiff failed to meet Listing 12.03. (Dkt. No. 22, at 3–5). Plaintiff maintains that Magistrate Judge Dancks "correctly found that the [ALJ] did not properly consider and explain whether Plaintiff's mental impairments

---

[4] Here, Magistrate Judge Dancks cited a treating psychiatrist's 2018 note that "Plaintiff experienced an 'increase in symptoms when under stress'" and had an "'increase in paranoia & relapse'" when she "last worked," (Dkt. No. 21, at 11 (citing R. 1096)); the state agency review psychologists' 2019 notations that Plaintiff could "'be affected negatively by stress' and, 'may have difficulties . . . adapting to changes,'" (*id.* (citing R. 230, 251)); and, a nurse practitioner's 2020 note that Plaintiff "cannot tolerate stress or changes in demand," (*id.* (citing R. 707)).

satisfied the criteria contained in Listing 12.03." (Dkt. No. 23, at 1). In light of the Commissioner's specific objection, the Court reviews the step-three issue de novo.[5]

At the third step, the Commissioner determines whether the "impairment(s) . . . meets or equals" a listing in Appendix 1 of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii); *see Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (explaining that at the Commissioner determines at step three "whether the impairment (or combination) meets or equals the severity of one of the impairments specified in" the listings). "The claimant bears the burden of proof [at the third step] of the sequential inquiry." *Schillo*, 31 F.4th at 70 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). If the claimant proves that he or she has an impairment that meets a listing in Appendix 1, the Commissioner may find the claimant disabled at the third step. 20 C.F.R. § 404.1520(d). The Second Circuit has "cautioned that an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment.'" *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982).

Here, as stated, the ALJ made no express finding regarding paragraph C of Listing 12.03. In the decision, the ALJ outlined the four broad areas of functioning specified in paragraph B: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. R. 786. The decision contains no description of the paragraph C criteria. The only indication that the ALJ considered whether Plaintiff met paragraph C is her observance that both state agency psychologists opined

---

[5] In reviewing the step-three issue, the Court has considered that there are two distinct time periods at issue: January 1, 2008 to December 31, 2008, the date Plaintiff was last insured, for Plaintiff's disability insurance benefits claim and August 31, 2018, the date of Plaintiff's application, to April 17, 2023, the date of the ALJ's decision, for Plaintiff's supplemental security income claim. *See* 20 C.F.R. §§ 404.131(b) (explaining that a claimant "must have disability insured status in the first full month that [she is] disabled" to be entitled to disability insurance benefits), 416.335 (explaining that supplemental security income benefits are not payable prior to the application date). In reviewing the evidence, the ALJ noted that there was "little-to-no evidence of record before December 31, 2008, other than to establish the diagnoses in the claimant of generalized anxiety disorder with panic disorder and dysthymic disorder." R. 797. Plaintiff has not specifically challenged this finding.

6

that "the evidence did not establish the presence of the 'paragraph C' criteria." R. 787–88. The ALJ offered no specific support or rationale for her implicit conclusion that Plaintiff failed to meet paragraph C.

However, the lack of "specific support" and "the absence of an express rationale does not prevent [courts] from upholding the ALJ's determination regarding [an] appellant's claimed listed impairment[ ] [where] portions of the ALJ's decision and the evidence before [her] indicate that [her] conclusion was supported by substantial evidence." *Rubin v. O'Malley*, No. 23-540-cv, -- F.4th --, 2024 WL 4258363, at *9, 2024 U.S. App. LEXIS 24076, at *24 (2d Cir. Sept. 23, 2024) (quoting *Berry*, 675 F.2d at 468); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

As Magistrate Judge Dancks explained, to satisfy paragraph C, Plaintiff was required to establish that her mental disorder is "serious and persistent," that is, that it has existed for more than "2 years," and that Plaintiff receives "both" (1) "ongoing" medical treatment, therapy, "psychosocial supports(s) or a highly structured setting" that "diminishes" the signs and symptoms of her mental disorder, and (2) "[m]arginal adjustment." (Dkt. No. 21, at 9 (quoting Listing 12.03(C)).

1.     **"Serious and Persistent" Mental Disorder and "Ongoing" Treatment**

In this case, the ALJ's detailed recitation of the evidence of the mental health treatment Plaintiff received from 2007 to 2022, and the extensive medical health record in this case, indicates that Plaintiff presented evidence satisfying the "serious and persistent" and "ongoing" requirements of paragraph C. The ALJ recounted Plaintiff's "medication management and

7

supportive therapy," R. 790, Plaintiff's multiple diagnoses, R. 790 ("She has been variously diagnosed . . . as having schizophrenia, generalized anxiety disorder with panic disorder, dysthymic disorder . . . major depressive disorder, paranoid schizophrenia, major depressive disorder with psychotic features, and brief psychiatric disorder with post-partum onset."), Plaintiff's three hospitalizations in 2015 and 2016 for mental health issues, R. 789, summaries of notes from Plaintiff's mental health medication management providers and therapists reflecting visits and Plaintiff's condition from 2017 through 2022, R. 791–95, and Plaintiff's many prescriptions, R. 790 (noting prescriptions for Luvox and Risperdal in 2008), 791 (noting prescription for Abilify in 2018–2020), 794 (noting that in 2022 Plaintiff "was receiving Invega for her schizoaffective disorder" and that Plaintiff had reported to her psychiatrist "that she has been getting her psychiatric injection medication pretty consistently over the past three years"). Thus, substantial evidence supports a determination that Plaintiff satisfied the "serious and persistent" or "ongoing" treatment criteria of paragraph C. *See*, *e.g.*, *Rubin*, 2024 WL 4258363, at \*12, 2024 U.S. App. LEXIS 24076, at \*35 (finding that that ALJ not only failed to address "the C(1) criterion," but that in light of evidence that the plaintiff had a lengthy history of treatment at a psychiatric clinic, including weekly appointments, was "prescribed several psychotropic medications," substantial evidence did not support a determination that the plaintiff "did not satisfy the requirements of paragraph C")[6]; *see*, *e.g.*, *Damon J. v. Comm'r of Soc. Sec.*, No. 21-cv-28, 2023 WL 2088349, at \*5, 2023 U.S. Dist. LEXIS 27480, at \*10 (W.D.N.Y. Feb. 17, 2023) ("Plaintiff's two hospitalizations, treatment records, and participation in the [state

---

[6] Although the Listing at issue in *Rubin* was Listing 12.04 (Depressive, bipolar and related disorders), *Rubin*, 2024 WL 4258363, at \*7, 2024 U.S. App. LEXIS 24076, at \*21 the paragraph C criteria in Listings 12.03 and 12.04 are identical. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04.

8

recovery services] program also seem to satisfy paragraph C1's ongoing treatment requirement.").

### 2. Marginal Adjustment

Turning to paragraph C(2), the Court notes that the ALJ provided no explanation whatsoever regarding the implicit conclusion that Plaintiff failed to show "marginal adjustment." However, as discussed above, the Court "is permitted to uphold an ALJ's determination regarding a Listed Impairment even where the ALJ does not provide her rationale for this determination, if it is supported by other parts of the ALJ's decision and record." *Rubin*, 2024 WL 4258363, at *12, 2024 U.S. App. LEXIS 24076, at *34.

"Marginal adjugment" is defined in paragraph C(2) as the "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." Listing 12.03(C)(2). "[M]arginal adjustment is demonstrated where there is evidence that changes or increased demands have led to exacerbation of symptoms and signs, and to deterioration in functioning." *Campbell v. Comm'r of Soc. Sec.*, No. 19-cv-03215, 2020 WL 5641200, at *11, 2020 U.S. Dist. LEXIS 173789, at *30–31 (S.D.N.Y. Sept. 22, 2020) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(G)(2)(c)). "Examples of such deterioration include the inability to function outside of your home or a more restrictive setting, without substantial psychosocial support; the necessity for a significant change in medication or other treatment; and episodes of deterioration that require hospitalization." *Id.*, 2020 WL 5641200, at *11, 2020 U.S. Dist. LEXIS 173789, at *31 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(G)(2)(c)); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c) (explaining that there is "marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have

9

become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports").

As the Commissioner points out, the ALJ extensively analyzed the medical evidence and medical source statements in the record.[7] The ALJ noted that treatment notes indicated that Plaintiff has made great progress in recent years, has been able to care for her seven children (though not all lived at home during the relevant time periods), R. 793; *see also* R. 209, 818–19; transitioned in or around April 2019 "to less care," R. 792; *see also* R. 1084 (noting that Plaintiff was transferring from an "Assertive Community Treatment Program" "to a traditional clinical setting"); and was functioning independently in the community, R. 792; *see also* R. 711. However, the medical and non-medical evidence also shows that that since Plaintiff's hospitalizations in 2015 and 2016, Plaintiff has required nearly weekly psychiatric support, including medication management appointments and therapy, R. 208; *see also*, *e.g.*, R. 1078 (showing four mental health appointments in October 2019), 1074 (showing seven mental health appointments in February 2020), 1070–71 (four to five appointments in August 2020), R. 1068 (showing five mental health appointments in September 2020)), as well as monthly medication injections, R. 661, 821; that Plaintiff has no friends outside her family, R. 823; and that any shopping, cleaning, laundry, attendance at appointments has been done with the support of Plaintiff's sisters-in-law and mother-in-law, R. 204, 819, 823. Because the ALJ did not address the issue of marginal adjustment and because there is evidence that Plaintiff does little outside

---

[7] There is, as Magistrate Judge Dancks found, evidence in the record indicating that Plaintiff had difficulty tolerating stress and changes. (Dkt. No. 21, at 11). For example, Nurse Practitioner Thompson noted on February 19, 2020, that Plaintiff "cannot tolerate stress or changes in demand," R. 707; Plaintiff's psychiatrist, Dr. Jayawardena, opined on September 13, 2018 that Plaintiff had an "increase in symptoms when under stress" and an "increase in paranoia & relapse has occurred when [she] last worked," R. 1096; and both state agency psychologists observed that Plaintiff "can be affected negatively by stress" and "may have difficulties . . . adapting to changes," R. 230, 251. Further, Dr. Dambrocia opined that Plaintiff had a moderate limitation in adapting or managing oneself. R. 229. However, the ALJ did not find these aspects of these medical source opinions persuasive. *See* R. 788, 798–801.

her home without support, the omission of a rationale explaining why Plaintiff did not meet the paragraph C criteria is not harmless, and the Court finds remand is required to enable the ALJ to discuss the paragraph C criteria in the first instance. *Cf.*, *e.g.*, *Rubin*, 2024 WL 2024 WL 4258363, at *8, 2024 U.S. App. LEXIS 24076, at *23 (finding "the ALJ erred because she misinterpreted the medical and lay evidence, failing to appreciate the consistent narrative that it provides that supports [the medical source] opinion that [the plaintiff] Rubin met the requirements of Listed Impairment 12.04"). Accordingly, the Court adopts Magistrate Judge Dancks's recommendation that the Commissioner's decision be reversed and remanded.

## IV.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Report and Recommendation (Dkt. No. 21) is **ADOPTED**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED** that for the reasons in the Report-Recommendation and for the reasons stated herein, the decision of the Commissioner is **REVERSED and this matter is REMANDED.**

**IT IS SO ORDERED.**

Dated: September 30, 2024
       Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge